**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-3806
_____

UNITED STATES OF AMERICA

v.

MAURICE MICHAEL HENDERSON,
a/k/a NEW YORK MO

Maurice M. Henderson,
Appellant
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(No. 1-12-cr-00255-001)
District Judge: Hon. John E. Jones, III
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
May 18, 2015

Before: FUENTES, GREENAWAY, JR., and SLOVITER, *Circuit Judges*

(Opinion Filed: May 28, 2015)
_____

OPINION*
_____

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

FUENTES, *Circuit Judge*:

A jury convicted Maurice Henderson for his role in a drug conspiracy in violation of 21 U.S.C. §§ 841 and 846, but found him not guilty of a firearm charge. He raises two issues on appeal.[1]

Henderson first argues that the District Court improperly struck a potential juror for cause. Prior to trial, Juror 38 informed the District Court that, seven years earlier, he had been charged with possession of ecstasy and driving under the influence. This disclosure prompted the government to ask if Juror 38 had "any feelings about [the] legalization of drugs."[2] Juror 38 responded, "They should be legal."[3] Seeking to clarify this answer, the District Court asked Juror 38 if he believed cocaine and crack cocaine—the specific drugs Henderson possessed and distributed—should be legal. Juror 38 again answered in the affirmative. The government queried whether his opinions about drugs would impair his ability to be impartial, to which Juror 38 replied, "I don't believe so."[4] In response to the government's question about whether he could follow the law even if he did not agree with it, Juror 38 said, "Yes."[5]

Following this colloquy, the government moved to strike Juror 38 for cause, arguing, "I understand he said he can be impartial, but [this is] a drug case, he says he

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231 and we have jurisdiction under 28 U.S.C. § 1291.
[2] App. at 16.
[3] *Id.*
[4] *Id.*
[5] *Id.*

believes in the legalization of drugs, and he has a prior criminal offense involving drugs, and I don't think under the circumstances his answers are forthright."[6] The District Court granted the motion. "[R]egardless of [Juror 38's] broader answer that he would have no bias," the District Court found problematic his statement "that all drugs, including the drugs in question in this case . . . should be legalized."[7]

To support his argument that the District Court erred, Henderson relies heavily on our decision in *United States v. Salamone*, 800 F.2d 1216 (3d Cir. 1986). The defendant in *Salamone* was charged with various firearm offenses. During jury selection, the court removed six potential jurors "solely on the basis of their affiliation with the National Rifle Association ('NRA')."[8] We found this to be an abuse of discretion. "To allow trial judges and prosecutors to determine juror eligibility based solely on their perceptions of the external associations of a juror threatens the heretofore guarded right of an accused to a fair trial by an impartial jury as well as the integrity of the judicial process as a whole."[9] Henderson argues that the exclusion of Juror 38 runs afoul of *Salamone* because the District Court "systematic[ly] exclu[ded]" an "entire classification of persons: those who oppose prohibition of controlled substances."[10]

---

[6] *Id.* at 18.
[7] *Id.* at 21.
[8] *Salamone*, 800 F.2d at 1218.
[9] *Id.* at 1225; *see also Thiel v. S. Pac. Co.*, 328 U.S. 217, 220 (1946) ("Jury competence is an individual rather than a group or class matter.").
[10] Appellant Br. at 12.

We do not find Henderson's argument persuasive. "Determining whether a prospective juror can render a fair verdict lies peculiarly within a trial judge's province."[11] The approach taken by the District Court here differed markedly from that of the trial court in *Salamone*. The District Court engaged in an individualized inquiry at sidebar and determined that Juror 38 held personal views about the legalization of drugs that could affect his ability to apply the law impartially in this particular case. That judgment was based on credibility and demeanor evidence, and was supported by a factual foundation. The Court did not exclude from jury service a class of individuals based on implied bias or organizational affiliations, as Henderson suggests. The trial court in *Salamone*, however, did just that. We found error there because "at no time were the excluded jurors questioned as to their ability to faithfully and impartially apply the law. Indeed, no inquiries whatsoever were directed to the excluded jurors to determine the nature and extent of their commitment to any principles that might have impaired their ability to serve impartially."[12] Instead, the prospective jurors were removed strictly because of their affiliation with the NRA. Accordingly, the District Court did not abuse its discretion in dismissing Juror 38.

---

[11] *United States v. Murray*, 103 F.3d 310, 323 (3d Cir. 1997) (internal quotation marks omitted); *see also Kirk v. Raymark Indus., Inc.*, 61 F.3d 147, 153 (3d Cir. 1995) (explaining that a trial court's decision with respect to dismissing a potential juror for cause is entitled to "special deference" because it is in the "best position to assess the credibility and demeanor of the prospective jurors").

[12] *Salamone*, 800 F.2d at 1226.

Henderson's second argument focuses on the government's use of a summary witness. Three of Henderson's co-conspirators—Kelly Siar, Annalyn Black, and Derrice Sassaman—testified at his trial. After their testimony, the government called Agent William Cook to provide his calculations of drug weights attributable to Henderson based on his co-conspirators' testimony. Henderson objected to using Cook as a summary witness, arguing that his testimony would improperly "go[] to the jury's recollection of what the testimony was" and that "the jury doesn't need him to summarize the testimony for them."[13] Following this objection, the District Court directed the parties to order an expedited transcript so that it could review precisely what the co-conspirators had said during trial. Court was then adjourned for the day.

The next morning, outside the presence of the jury, the government described Cook's intended testimony with respect to each of the co-conspirators. The District Court said it would permit Cook to provide a summary of Siar's testimony concerning her knowledge of eight to ten drug buying trips, each one involving 500 to 1,000 grams of cocaine. However, the District Court ruled that Cook could not provide summary testimony as to the other two witnesses because Black's statements did not explicitly bear on drug weights and Sassaman's testimony was "totally contradictory."[14] Allowing summary testimony for those witnesses, the District Court believed, would be "prejudicial

---

[13] App. at 68, 71.
[14] *Id.* at 82.

5

and runs the serious risk that it's going to misstate the testimony in a way that I can't cure by an instruction."[15]

Back in front of the jury, Cook calculated the low-end (4,000 grams) and high-end (10,000 grams) drug weights flowing from Siar's testimony. Prior to cross-examination, the District Court issued a cautionary instruction, advising the jury that Cook's testimony was "not evidence in and of itself. The evidence that you are to consider in this case is the testimony of the witness or witnesses to whom he has been referring."[16]

Henderson argues on appeal that the District Court should not have let Cook serve as a summary witness at all. He reasons that this was a short, straightforward case with only a handful of witnesses and that we should not doubt the jury's ability to employ basic arithmetic skills to calculate drug weights. The government's real reason for calling a summary witness, Henderson says, was "to cleanse the testimony of witnesses of arguably weaker credibility."[17]

We review the District Court's evidentiary ruling for an abuse of discretion.[18] Courts have permitted the use of summary witnesses and exhibits in drug conspiracy cases by relying on Federal Rule of Evidence 611(a), which empowers courts to "exercise reasonable control over the mode and order of examining witnesses and presenting

---

[15] *Id.* at 80.
[16] *Id.* at 95.
[17] Appellant Br. at 15.
[18] *Travelers Cas. & Sur. Co. v. Ins. Co. of N. Am.*, 609 F.3d 143, 157 (3d Cir. 2010).

evidence so as to . . . make those procedures effective for determining the truth."[19] In

*United States v. Johnson*, the Fourth Circuit considered two factors in evaluating

summary witnesses and exhibits: (1) whether the summary aids the jury in ascertaining

the truth; and (2) the resulting prejudice to the defendant.[20]

Applying these principles here, we find that the District Court did not abuse its

discretion. In fact, it exercised its discretion with care. Starting with the second *Johnson*

factor, the District Court was rightfully skeptical of the government's proffer, ruling that

Cook could not provide summary testimony as to two of the three co-conspirators because

their testimony was not clear and consistent as to drug weights. This approach mitigates

the risk of prejudice.[21] The summary testimony that was permitted was based on

statements from Siar that were not contradicted. Moreover, the District Court provided a

cautionary instruction to the jury and Cook was subject to cross-examination.[22] While we

take heed of Henderson's argument that this was not a particularly lengthy or complex

trial, we find the District Court acted within its discretion in determining that there were

enough drug transactions at issue such that Cook's testimony could assist the jury.

For these reasons, we affirm the District Court's judgment.

---

[19] *See, e.g.*, *United States v. Ray*, 370 F.3d 1039, 1046 (10th Cir. 2004), *vacated on other grounds*, 543 U.S. 1109 (2005); *United States v. Johnson*, 54 F.3d 1150, 1156-57 (4th Cir. 1995).
[20] 54 F.3d at 1159.
[21] *See United States v. Milkiewicz*, 470 F.3d 390, 398 (1st Cir. 2006) (allowing summary exhibits where trial court "required the government to modify the summaries to eliminate unnecessary and potentially prejudicial information").
[22] *See Ray*, 370 F.3d at 1047.